IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALEX GONZALES, SR., individually and as "Next Friend" to minor child Z.A.G. and ELIZABETH HERRERA, aka ELIZABETH GONZALES, individually and as "Next Friend" to minor child Z.A.G., | § § § § § § | |
| v. | § § | 1:22-CV-655-RP |
| CITY OF AUSTIN, | § § | |
| Defendants. | § § | |

| | | |
|---|---|---|
| JESSICA ARELLANO, individually, and as next friend of Z.A., a minor child, wrongful death beneficiary and heir to the Estate of Alex Gonzales, Jr., | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:23-CV-8-RP |
| THE CITY OF AUSTIN, GABRIEL GUTIERREZ, and LUIS SERRATO, | § § § | |
| Defendants. | § § | |

| | | |
|---|---|---|
| ALEX GONZALES, SR., et al., | § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:23-CV-9-RP |
| LUIS SERRATO and GABRIEL GUTIERREZ, | § § § | |
| Defendants. | § § | |

## **ORDER**

Before the Court is Defendant Luis Serrato, Gabriel Gutierrez, and the City of Austin's (collectively, "Defendants") joint motion to compel DNA testing to determine Z.A.G.'s standing. (Dkt. 147). Plaintiffs Alex Gonzales, Sr. and Elizabeth Herrera (the "Gonzales Plaintiffs") and Plaintiff Jessica Arellano ("Arellano") each filed a response. (Dkts. 158, 160). Also before the Court is the Gonzales Plaintiffs' renewed motion for appointment of guardian ad litem, (Dkt. 159), and Arellano's response in opposition, (Dkt. 170). Having reviewed the parties' briefing, the record, and the relevant law, the Court issues the following order.

## **I. BACKGROUND**

This is a § 1983 police shooting case arising from the death of Alex Gonzales, Jr. ("Alex") after he was allegedly shot by Austin Police Department Officers Gutierrez and Serrato. Arellano was also allegedly shot and injured by Gutierrez during the incident. (*See* 3d Am. Compl., Dkt. 86). This incident resulted in three separate lawsuits, which the Court has consolidated into this action. The first set of plaintiffs in this case are Gonzales, Jr.'s parents—the Gonzales Plaintiffs—who bring claims as wrongful death beneficiaries in their individual capacities and who bring claims as "next friend" of minor child Z.A.G.—the child of Arellano and the alleged child of Gonzales, Jr. The second set of plaintiffs in the case is Arellano—Gonzales, Jr.'s long-time girlfriend at the time of his death—in her individual capacity and as next friend to Z.A.G. in his capacity as wrongful death beneficiary. (*See* Order, Dkt. 96, at 2–3). Discovery in this case closed on May 20, 2024. (*See* Text Order dated Apr. 5, 2024). The dispositive motions deadline passed on July 1, 2024, and trial is scheduled to begin on December 2, 2024. (*See* Order, Dkt. 133).

Earlier in this litigation, the Gonzales Plaintiffs filed a motion for the appointment of a guardian ad litem to represent Z.A.G., arguing that Arellano and Z.A.G. had "actual and potential conflicts of interests that preclude Arellano from serving as 'Next Friend' for Z.A.G." (*Id.* (quoting

Mot. Appt., Dkt. 30, at 10)). On February 20, 2024, the Court issued an order denying the Gonzales

Plaintiffs' motion for appointment of a guardian ad litem. The Court found that Texas law gave

Arellano—as Z.A.G.'s natural mother and legal guardian—the right to prosecute Z.A.G.'s claims on

his behalf, and the law acknowledged that she is presumed to act in the best interests of her child.

(*Id.* at 7). The Court found that the Gonzales Plaintiffs had not provided evidence to overcome this

presumption to suggest that a conflict exists between Arellano and Z.A.G. (*Id.*). The Court denied

the motion without prejudice, stating that the parties could re-submit their request for a guardian ad

litem should a settlement be reached in the case. (*Id.* at 7–8).

On June 3, 2024, the Gonzales Plaintiffs filed a no-evidence motion for summary judgment

regarding Z.A.G.'s standing and capacity to assert claims. (Dkt. 141). The Gonzales Plaintiffs assert

that Z.A.G. bears the evidentiary burden to establish his own standing and capacity to sue under the

Texas Wrongful Death Statute and the Texas Survival Statute. They argue that the record contains

no evidence that Z.A.G. was the biological or presumed child of Gonzales, Jr. Accordingly, they

argue that the Court should enter judgment against Z.A.G.'s claims. (*Id.*). In response, Arellano filed

a response in opposition, detailing the circumstantial evidence that exists to demonstrate that Z.A.G.

is Gonzales, Jr.'s son and the Gonzales Plaintiffs' grandson. (*See* Dkt. 152).

Defendants then filed a joint motion to compel DNA testing. (Dkt. 147). Defendants

request a court order, pursuant to Federal Rule of Civil Procedure 35, to compel a paternity test to

determine Z.A.G.'s paternity and, accordingly, his standing to assert claims as a wrongful death

beneficiary in this case. (*Id.* at 12). They argue that such an order is justified, even outside the

discovery period, because (1) the Gonzales Plaintiffs did not challenge Z.A.G.'s parentage until they

sat for depositions after discovery closed on May 28, 2024; (2) the paternity test is important to

conclusively determine Z.A.G.'s parentage and avoid the complication of resolving the issue at trial;

and (3) the paternity test will not prejudice any party. (*Id.* at 9–11). Defendants propose a specific

paternity testing vendor and have offered to pay the costs of the test. (*Id.* at 3). Defendants detail how they have coordinated with Travis County to send blood specimens for Gonzales, Jr. to a lab for the paternity test. (*Id.*). They anticipate that the testing will take three weeks to complete. (*Id.* at 11). Arellano filed a response, indicating that she is unopposed to Defendants' motion. (Dkt. 160).

The Gonzales Plaintiffs also filed a response, indicating that they only oppose Defendants' motion "until such time as either the Court or an appointed guardian ad litem approves the requested DNA testing as being in the best interests of minor child Z.A.G." (Dkt. 158, at 2). The Gonzales Plaintiffs express concern that Defendants' motion may prejudice Z.A.G. because "Z.A.G. may lose standing to pursue the legal claims that have been asserted on Z.A.G.'s behalf in this lawsuit as a result of the requested paternity testing." (*Id.*). They argue that any doubts concerning Z.A.G.'s paternity should have been resolved during the discovery period and that they approached Arellano about a paternity test in fall 2023 but at that time Arellano refused. (*Id.*). In her response, Arellano explains that she did not conduct a paternity test during the discovery period because at that stage in the litigation, no one was challenging Z.A.G.'s paternity. (Resp., Dkt. 160, at 3–4).

On the same day that they filed their response to the joint motion to compel DNA testing, the Gonzales Plaintiffs also filed a renewed motion for appointment of guardian ad litem. (Dkt. 159). They assert that "[g]iven the current procedural posture and recent events in this case," a guardian is needed to "speak on behalf of Z.A.G. and the best interest of the child with respect to pending motions and any other litigation issues." (*Id.* at 2). The Gonzales Plaintiffs believe a guardian ad litem is necessary to speak on behalf of Z.A.G. in regard to the motion for DNA testing. (*Id.* at 3). They also suggest that Arellano's failure to serve specific expert reports on behalf of Z.A.G. indicates that he is not being adequately represented in this case. (*See id.* at 2–3). Arellano filed a response in opposition to this motion, arguing that neither her counsel's strategic litigation

4

decisions surrounding expert reports nor her willingness to cooperate in the DNA testing demonstrate a conflict between her and Z.A.G. such that she cannot represent him in this lawsuit. (*See* Dkt. 170).

## II. DISCUSSION

The Court begins with the Gonzales Plaintiffs' renewed motion for appointment of a guardian ad litem. As summarized above, the Court has already addressed the Gonzales Plaintiffs' concerns about Z.A.G.'s representation in this case in its prior order on the first motion for appointment of a guardian ad litem. Arellano is Z.A.G.'s natural mother and legal guardian, and as such, she has the legal right to prosecute her child's claims on his behalf and is presumed to act in his best interest. *See* Tex. Fam. Code § 151.001(a)(7); *Troxel v. Granville*, 530 U.S. 57, 68 (2000). Arellano's willingness to subject Z.A.G. to a paternity test does not constitute evidence that Arellano is inadequately representing Z.A.G. in this lawsuit; nor do her counsel's decisions on expert reports. Far from indicating that Arellano has a conflict with Z.A.G., the Gonzales Plaintiffs' motions have instead demonstrated that they are the ones whose interests conflict with Z.A.G. The Gonzales Plaintiffs' concerns about the consequences of a paternity test on Z.A.G.'s position in this case ring hollow as they are the only party questioning his paternity and standing. Given that the Gonzales Plaintiffs have cast doubt on Z.A.G.'s claims, the Court does not give their arguments about the adequacy of Z.A.G.'s representation much weight.

The Court denied the Gonzales Plaintiffs' previous request for a guardian ad litem without prejudice so that they could reassert their request should a guardian ad litem be needed for settlement purposes—not so that they could relitigate issues about Arellano's representation of Z.A.G. that the Court has already addressed. Nothing in their renewed motion changes the Court's prior analysis. The renewed motion for appointment of a guardian ad litem is therefore denied.

The Court next turns to Defendants' joint motion to compel DNA testing. Federal Rule of Civil Procedure Rule 35 provides that courts may order a party whose physical condition, including blood groups, is in controversy to submit to a physical examination. Fed. R. Civ. P. 35(a)(1). The order may be made only on motion for good cause and on notice to all parties and persons to be examined. Fed. R. Civ. P. 35(a)(2). A scheduling order may be modified only for good cause and with the court's consent. Fed. R. Civ. P. 16(b)(4). There are four relevant factors to consider when determining whether there is good cause under Rule 16(b)(4): "(1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice." *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007).

The Court finds good cause to modify the scheduling order to compel a DNA test to determine Z.A.G.'s paternity. A paternity test should provide conclusive evidence on the issue of Z.A.G.'s standing to participate in this lawsuit, allowing the issue to be resolved well before trial. The Court agrees with Defendants and Arellano that an order outside the discovery period is warranted due to the late nature of the Gonzales Plaintiffs' motion questioning Z.A.G.'s paternity. Given that all parties—especially Arellano as Z.A.G.'s mother—are essentially unopposed to Defendants' motion, the order to compel will not prejudice any party. And there is precedent for courts compelling DNA testing to resolve issues of paternity in a § 1983 case. *See Turk v. Magnum*, 268 F. Supp. 3d 928, 939 (S.D. Tex. 2017) (granting a motion to compel a father to submit to a paternity test to determine if he had standing to sue as the parent and wrongful death beneficiary of the decedent). Accordingly, the Court grants the motion to compel DNA testing. After the Court receives the results of the paternity test, the Court will resolve the Gonzales Plaintiffs' motion for summary judgment regarding Z.A.G.'s standing and capacity to assert claims.

### III. CONCLUSION

For these reasons, **IT IS ORDERED** that the Gonzales Plaintiffs' renewed motion for appointment of a guardian ad litem, (Dkt. 159), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' joint motion to compel DNA testing to determine Z.A.G.'s standing, (Dkt. 147), is **GRANTED**.

**IT IS FINALLY ORDERED** that:

1. The Travis County Medical Examiner's Office is to release the specimens appropriate for genetic testing to the following testing facility; and:

ProResults Drug & DNA Testing
7801 N Lamar Blvd B-159
Austin, TX 78752
(512) 374-9977

2. All costs of testing are to be administered by Defendants.

**SIGNED** on July 3, 2024.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE