IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALEX GONZALES, SR., individually and as "Next Friend" to minor child Z.A.G. and ELIZABETH HERRERA, aka ELIZABETH GONZALES, individually and as "Next Friend" to minor child Z.A.G., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF AUSTIN, <br><br> Defendants. | § § § § § § § § § § § § § § § § | 1:22-CV-655-RP |
| JESSICA ARELLANO, individually, and as next friend of Z.A., a minor child, wrongful death beneficiary and heir to the Estate of Alex Gonzales, Jr., <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF AUSTIN, GABRIEL GUTIERREZ, and LUIS SERRATO, <br><br> Defendants. | § § § § § § § § § § § § § § § | 1:23-CV-8-RP |
| ALEX GONZALES, SR., et al., <br><br> Plaintiffs, <br><br> v. <br><br> LUIS SERRATO and GABRIEL GUTIERREZ, <br><br> Defendants. | § § § § § § § § § § § | 1:23-CV-9-RP |

1

**ORDER**

Before the Court is Defendant City of Austin's (the "City") Motion for Judgment as a Matter of Law. (Dkt. 431). The Court heard oral arguments on the motion from counsel for the City and counsel for Plaintiffs Alex Gonzales, Sr. and Elizabeth Herrera (collectively, the "Gonzales Plaintiffs") on July 1, 2025. (Min. Entry, Dkt. 433). The Court orally granted the motion on the record on July 2, 2025. This written order follows to provide additional analysis.

## I. BACKGROUND

This is a Section 1983 case arising from two police officer involved shootings that took place in the early morning of January 5, 2021.[1] The first shooting stemmed from an alleged road rage incident involving off-duty Austin Police Department ("APD") Officer Gutierrez and civilians Alex Gonzales, Jr. ("Gonzales") and Jessica Arellano ("Arellano"), which led to Gutierrez shooting and injuring Gonzales and Arellano. This shooting then led to a second confrontation which ended with on-duty APD Officer Luis Serrato ("Serrato") fatally shooting Gonzales.

The two shootings resulted in three lawsuits, which were consolidated into this action on August 2, 2023. (*See* Order, Dkt. 54). The Gonzales Plaintiffs asserted claims under 42 U.S.C. § 1983 as wrongful death beneficiaries of Gonzales and heirs to the Estate of Gonzales. They alleged that Gutierrez and Serrato used excessive force against Gonzales in violation of the Fourth Amendment. (2d Am. Compl., Dkt. 85, ¶¶ 80–96). Arellano brought a Section 1983 claim against Gutierrez alleging that he used excessive force when he shot her, violating her Fourth Amendment rights. (Am. Compl., Dkt. 87, ¶¶ 139–147). The Gonzales Plaintiffs and Arellano also asserted claims against the City pursuant to *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978). They alleged that the City is liable for Arellano's injuries and Gonzales' death because the City's

---

[1] The facts of this consolidated action are more fully explained in the Court's Order on the parties' motions for summary judgment. (*See* Dkt. 328).

2

official policies, practices, and customs were a cause of Gutierrez and Serrato's uses of excessive force. (*See id.* ¶¶ 148–158; 3d Am. Compl., Dkt. 86, ¶¶ 138–162).

On March 27, 2025, the Court issued its order on the parties' motions for summary judgment. (Dkt. 328). The Court granted Serrato's motion for summary judgment, finding that Serrato was entitled to qualified immunity on the Gonzales Plaintiffs' Section 1983 claims against him. The Court also granted in part and denied in part the City's motions for summary judgment. The Court held that a reasonable jury could find that Gutierrez committed excessive force when he shot Gonzales and Arellano. On Plaintiffs' *Monell* claims, the Court granted the City summary judgment on six theories of *Monell* liability but denied summary judgment on a seventh theory, holding that a reasonable jury could find that Gutierrez' alleged excessive force was caused by an alleged City practice of permitting excessive force by under-investigating and under-disciplining it. (*See id.*).

Subsequently, Arellano and Defendants reached a settlement of her claims. Arellano moved to dismiss her claims against Defendants, (Dkt. 398), and the Court granted Arellano's motion to dismiss, (Dkt. 399). Thus, the only claims remaining for trial were the Gonzales Plaintiffs' Fourth Amendment claims against Gutierrez and their *Monell* claims against the City.

A jury trial on those claims was held from June 23, 2025, through July 3, 2025. (*See* Min. Entry, Dkt. 415). After presenting testimony and evidence over several days, the Gonzales Plaintiffs rested their case on July 1, 2025. (Min. Entry, Dkt. 433). That day, the City filed its Motion for Judgment as a Matter of Law. (Dkt. 431). The Court then heard oral argument from counsel for the City in support of its motion and counsel for the Gonzales Plaintiffs in opposition to the motion.

## II. LEGAL STANDARD

Judgment as a matter of law is proper "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary

3

basis to find for the party on that issue." Fed. R. Civ. P. (50)(a)(1); *Casey v. Toyota Motor Eng'g Manufacturing North Am. Inc.*, 770 F.3d 332, 326 (5th Cir. 2014). The decision to grant a Rule 50 motion is "a conclusion of law based upon a finding that there is insufficient evidence to create a fact question for the jury." *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1323 (5th Cir. 1994). To prevail on a Rule 50 motion, "the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of [its] claim." *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins.*, 898 F.3d 461, 473 (5th Cir. 2018) (quoting *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1039 (5th Cir. 2011)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 485 (5th Cir. 2017)).

## III. DISCUSSION

Municipalities, such as the City, are not vicariously liable for the constitutional torts of their employees. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692–93 (1978). Cities are rarely liable under Section 1983 for the isolated actions of their employees, and they can only be held liable for acts that are directly attributable to it "through some official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). To hold a municipality liable under Section 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, the following elements: (1) an official policy (2) promulgated by the municipal policy maker (3) which was the moving force behind the violation of a constitutional right. *Id.* "The official policy itself must be unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result." *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (cleaned up). The Fifth Circuit has emphasized the need for *Monell* plaintiffs to establish both the causal link ("moving force") and a

city's degree of culpability ("deliberate indifference" to federally protected rights). *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580. "These requirements must not be diluted, for where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability." *Snyder*, 142 F.3d at 796 (cleaned up).

The City moved for judgment as a matter of law because it argued that the Gonzales Plaintiffs failed to raise a substantial conflict in the evidence that would permit a reasonable jury to rule in their favor on the remaining *Monell* claim against the City. (Dkt. 431, at 3). The City argued that the Gonzales Plaintiffs had failed to produce sufficient evidence on three elements of their claim: a policy or practice of permitting excessive force, that the alleged practice was the moving force of the alleged constitutional violation committed by Gutierrez, and that the City acted with deliberate indifference. (*Id.* at 4–8).

The Court finds that the Gonzales Plaintiffs have failed to produce sufficient evidence to prove that the City's alleged practice of permitting excessive force was the moving force behind Gutierrez' shooting of Gonzales. To establish the "moving force" element of a *Monell* claim, a plaintiff must show a direct causal link between the policy and the constitutional violation. *Piotrowski*, 237 F.3d at 580. In other words, a plaintiff must show direct causation, i.e., that there was "a direct causal link" between the policy and the violation. *Id.* In its motion, the City relies on *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009), and argues that this Court should grant its motion for judgment as a matter of law following the reasoning in *James*. The Court agrees.

In *James*, plaintiffs sought to impose municipal liability on Harris County, Texas for the death of their family relative who was killed by a deputy sheriff, Wilkinson, who allegedly engaged in excessive force during an arrest. *Id.* at 614. The plaintiffs alleged that Harris County was liable under *Monell* because the Harris County sheriff's failure to thoroughly investigate officer-involved shootings created in the department an expectation of impunity for the use of excessive deadly

5

force. *Id.* To succeed on their *Monell* claim, the *James* plaintiffs had to produce evidence that Wilkinson understood that it was the Harris County sheriff's official policy only to cursorily investigate officer-involved shootings and consequently not to discipline for this conduct. *Id.* at 618.

At trial, Wilkinson testified only that he was aware that at some point in the process the District Attorney investigated officer-involved shootings; his testimony, however, went no further. *Id.* Wilkinson did not indicate whether he was aware that the sheriff abandoned further investigation and discipline for officer-involved shootings. *Id.* Accordingly, nothing in Wilkinson's own testimony suggested his actual personal knowledge of the alleged County policy of permitting excessive force. *Id.* The plaintiffs then attempted to establish Wilkinson's knowledge of the policy through a theory that the policy was so widely known that it created in the department an expectation of impunity for the use of excessive deadly force, and Wilkinson's personal knowledge reasonably could be assumed. *Id.* To establish that the policy was widely known, the plaintiffs relied on expert testimony attempting to demonstrate that the County's deputies would have known that the use of deadly force was not thoroughly investigated and disciplined. *Id.* at 618–19. The district court limited the expert's testimony and forbade the expert from opining that Wilkinson had knowledge of the alleged policy, finding that that there was no evidence from which this fact could be established. *Id.*

After trial, the district court granted judgment as a matter of law in favor of Harris County on the grounds that, even assuming that there was a constitutional violation, the evidence was insufficient to establish the County's liability for Wilkinson's use of force. *Id.* at 614–15. Specifically, the district court assumed that the evidence was sufficient to establish the existence of an alleged official policy permissive of excessive force due to the County's under-investigation of use of force incidents. *Id.* at 616. However, the district court concluded that there was no evidence that Wilkinson had personal knowledge of this alleged policy, nor that the alleged policy was so widely known that it created in the department an expectation of impunity for the use of excessive deadly

force. *Id.* Accordingly, the district court found that the evidence was insufficient to establish that the alleged policy was the moving force behind Wilkinson's actions. *Id.*

On appeal, the Fifth Circuit affirmed the district court's decision to grant Harris County judgment as a matter of law. *Id.* at 620. The Fifth Circuit affirmed the evidentiary ruling limiting the expert testimony, finding that it did not supply a "direct causal link" between the alleged policy and Wilkinson's alleged use of excessive force. *Id.* at 619. The court of appeals concluded: "A reasonable jury could not find that the alleged policy was the moving force behind Wilkinson's alleged excessive force, when there was no evidence that Wilkinson had knowledge of such policy." *Id.*

Here, the theory behind the Gonzales Plaintiffs' remaining *Monell* claim is similar to the one alleged and rejected in *James*—they allege that the City has maintained a practice of allowing excessive force of its officers by under-disciplining and under-investigating excessive force incidents. During their case-in-chief, however, the Gonzales Plaintiffs produced no evidence that Gutierrez was influenced by any other use of force incident or alleged Austin Police Department ("APD") custom of permitting excessive force. Nor did they produce any evidence that Gutierrez had knowledge of an alleged APD practice of under-investigating or not disciplining its officers for excessive force. They put on no testimony through Gutierrez or through their experts that Gutirerez was aware of an alleged APD practice of inadequately investigating or disciplining prior force incidents. At most, Gutierrez testified that he personally was unaware of other APD officers being disciplined for dishonesty or other APD officers being held liable for excessive force in a lawsuit. This testimony does not establish that Gutierrez had knowledge of an APD practice of under-investigating excessive force incidents. Further, when asked why he used lethal force against Gonzales, Gutierrez denied that any alleged APD practice played a role in his decision-making process; that testimony is not rebutted by any other evidence in the record. In this way, the

7

Gonzales Plaintiffs have produced even less evidence of Gutierrez' knowledge of the City's alleged policy than the plaintiffs did in *James*.

The Gonzales Plaintiffs argued that it is not necessary, to prove the moving force element, for an officer to testify that he was aware of an alleged municipal practice and acted in accordance with that policy. Instead, the Gonzales Plaintiffs essentially argued that if they have produced sufficient evidence of a practice of under-investigating excessive force, then one can presume that a defendant officer had knowledge of that practice and acted according to that policy. The Gonzales Plaintiffs point to the testimony of their expert, Jeff Noble, who testified that if the City had a culture of under investigating excessive force incidents, then one can presume that officers will feel like they can act with impunity.

However, that is the exact argument that the Fifth Circuit considered and rejected in *James*. Just as the expert failed to do in *James*, Noble has not linked his general theory about officer impunity specifically to Gutierrez and his use of force in this incident. For the Court to accept the Gonzales Plaintiffs' moving force argument, it would need to ignore the Fifth Circuit's holding in *James*. The Court cannot do so. Additionally, if all that was required from *Monell* plaintiffs was that they prove the existence of a municipal policy, then the moving force element would be diluted and the *Monell* liability would "collapse[] into respondeat superior liability"—the precise result that the Fifth Circuit has cautioned district courts to avoid. *See Snyder*, 142 F.3d at 796.

The Gonzales Plaintiffs produced no evidence at trial to directly link Gutierrez' actions to an alleged City practice permissive of excessive force. In other words, they have produced no evidence to prove that Gutierrez' use of force was caused by anything other than his alleged perception that Gonzales pointed a gun at him. As such, the Gonzales Plaintiffs have failed to produce sufficient evidence by which the jury could conclude that a City policy was the moving force behind Gutierrez' alleged constitutional violation. Because the Gonzales Plaintiffs have failed to produce sufficient

evidence on an essential element of their *Monell* claim, a reasonable jury would not have a legally sufficient evidentiary basis to find for the Gonzales Plaintiffs on that claim. Accordingly, the *Monell* claim is dismissed, and the City's Motion for Judgment as a Matter of Law is granted.

### IV. CONCLUSION

For these reasons and the reasons stated by the Court on the record, **IT IS ORDERED** that the City's Motion for Judgment as a Matter of Law, (Dkt. 431), is **GRANTED**. The Gonzales Plaintiffs' remaining *Monell* claim against the City is **DISMISSED**.

**SIGNED** on July 3, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE