**FILED**

June 15, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _Christian Rodriguez_

DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALEX GONZALES, SR., *individually and as "Next Friend" to minor child Z.A.G.* and ELIZABETH HERRERA, *a/k/a* ELIZABETH GONZALES, *individually and as "Next Friend" to minor child Z.A.G.*, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF AUSTIN, <br><br> Defendants. | §§§§§§§§§§§§§§§§ | 1:22-CV-655-RP |

| | | |
|---|---|---|
| JESSICA ARELLANO, *individually, and as next friend of Z.A., a minor child, wrongful death beneficiary and heir to the Estate of Alex Gonzales, Jr.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF AUSTIN, GABRIEL GUTIERREZ, and LUIS SERRATO, <br><br> Defendants. | §§§§§§§§§§§§§§§ | 1:23-CV-8-RP |

| | | |
|---|---|---|
| ALEX GONZALES, SR., et al., <br><br> Plaintiffs, <br><br> v. <br><br> LUIS SERRATO and GABRIEL GUTIERREZ, <br><br> Defendants. | §§§§§§§§§§§§§ | 1:23-CV-9-RP |

## ORDER

Before the Court is Plaintiffs Alex Gonzales, Sr. and Elizabeth Herrera Gonzales' ("Plaintiffs") Motion for New Trial Pursuant to Federal Rule of Civil Pursuant to Federal Rule of Civil Procedure 59(a). (Mot. New Trial, Dkt. 459). Defendants the City of Austin ("the City") and Gabriel Gutierrez filed a Response, (Dkt. 461), as did Defendant Luis Serrato, (Dkt. 463), and Plaintiffs filed a Reply, (Dkt. 467). Having reviewed the briefing, the record, and the relevant law, the Court will deny the motion.

## I. BACKGROUND

This is a Section 1983 case arising from two police officer involved shootings that took place in the early morning of January 5, 2021.[1] The first shooting stemmed from an alleged road rage incident involving off-duty Austin Police Department ("APD") Officer Gutierrez ("Gutierrez") and civilians Alex Gonzales, Jr. ("Gonzales") and Jessica Arellano ("Arellano"), which led to Gutierrez shooting and injuring Gonzales and Arellano. This shooting then led to a second confrontation which ended with on-duty APD Officer Luis Serrato ("Serrato") fatally shooting Gonzales.

The two shootings resulted in three lawsuits, which were consolidated into this action on August 2, 2023. (*See* Order, Dkt. 54). The Gonzales Plaintiffs asserted claims under 42 U.S.C. § 1983 as wrongful death beneficiaries of Gonzales and heirs to the Estate of Gonzales. They alleged that Gutierrez and Serrato used excessive force against Gonzales in violation of the Fourth Amendment. (2d Am. Compl., Dkt. 85, ¶¶ 80–96). They also asserted claims against the City of Austin (the "City") pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). (*See id.* ¶¶ 148–158; 3d Am. Compl., Dkt. 86, ¶¶ 138–62). Arellano also brought claims against Gutierrez and the City for the injuries she sustained during the first shooting. (Am. Compl., Dkt. 87, ¶¶ 139–

---

[1] The facts of this consolidated action are more fully explained in the Court's Order on the parties' motions for summary judgment. (*See* Dkt. 328).

58). Further, this litigation includes two intervention claims filed by Intervenor Hendler Flores Law, PLLC ("HFL") against the Gonzales Plaintiffs due to HFL's former representation of the Gonzales Plaintiffs earlier in this suit. (*See* 2d Am. Plea Intervention, Dkt. 98).

On March 27, 2025, the Court issued its order on the parties' motions for summary judgment. (Dkt. 328). The Court granted Serrato's motion for summary judgment, finding that Serrato was entitled to qualified immunity on the Gonzales Plaintiffs' Section 1983 claims against him. The Court also granted in part and denied in part the City's motions for summary judgment. The Court granted the City summary judgment on six theories of *Monell* liability but allowed one *Monell* claim to proceed to trial. (*See id.*). Subsequently, Arellano and Defendants reached a settlement of her claims. Arellano moved to dismiss her claims against Defendants, (Dkt. 398), and the Court granted Arellano's motion to dismiss, (Dkt. 399). Thus, the only claims remaining for trial were the Gonzales Plaintiffs' Fourth Amendment claims against Gutierrez and their remaining *Monell* claim against the City.

A jury trial on those claims was held from June 23, 2025, through July 3, 2025. (*See* Min. Entry, Dkt. 415; Min. Entry, Dkt. 441). After the Gonzales Plaintiffs rested their case, the City filed a motion for judgment as a matter of law, (Dkt. 431), which the Court granted, dismissing the Gonzales Plaintiffs' remaining *Monell* claim against the City, (Dkt. 438). On July 3, 2025, the jury then returned a verdict finding Gutierrez not liable on the Gonzales Plaintiffs' Fourth Amendment claims for excessive force or false arrest. (Dkt. 450). Plaintiffs now move for a new trial. (Mot. New Trial, Dkt. 459).

## II. LEGAL STANDARD

### A. Motion for a New Trial

"A district court can grant a motion for new trial [under Federal Rule of Civil Procedure Rule 59(a)] if the first trial was unfair or if the jury verdict was against the great weight of the

evidence." *Cates v. Creamer*, 431 F.3d 456, 460 (5th Cir. 2005); *see also Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 433 (1996). It must be "reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (citation omitted). "Motions for a new trial . . . must clearly establish either a manifest error of law or fact . . . . These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)).

The Fifth Circuit has identified three factors that "militat[e] against new trials"—the "simplicity of the issues, the degree to which the evidence was in dispute, and the absence of any pernicious or undesirable occurrence at trial." *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980). This test is disjunctive; only one factor must weigh in favor of granting a new trial, and even if none do, a new trial may be justified when other indicia demonstrate that the jury verdict was incorrect. *Cates*, 431 F.3d at 460–61 (citing *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 931 (5th Cir. 1982)). "If the new trial is granted on evidentiary grounds, the jury's verdict must be 'against the great—not merely the greater—weight of the evidence.'" *Scott v. Monsanto Co.*, 868 F.2d 786, 789 (5th Cir. 1989) (quoting *Conway*, 610 F.2d at 363). "[M]ere conflicting evidence or evidence that would support a different conclusion by the jury cannot serve as the grounds for granting a new trial." *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992).

Rule 59 allows the Court to grant a new trial "on all or some of the issues" presented in the initial trial. Fed. R. Civ. P. 59. But "even when only one issue is tainted by error or prejudice, a new trial must nevertheless be granted on all issues 'unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without

4

injustice.'" *Eximco, Inc. v. Trane Co.*, 748 F.2d 287, 290 (5th Cir. 1984) (quoting *Gasoline Prod. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931)).

## B. Motion for Reconsideration

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration." *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (cleaned up) (citing Fed. R. Civ. P. 54(b)). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Id.* (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)). "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)).

## III. DISCUSSION

Plaintiffs move for a new trial on a number of bases, which the Court will address in turn. Moreover, the Court construes Plaintiff's motion for a new trial regarding the Court's dismissal of Defendant Serrato to be a motion for reconsideration, as no trial was held regarding Plaintiffs' claims against Defendant Serrato.

5

**A. The City of Austin's Late Production**

Plaintiffs contend that a new trial should be granted based on the City's "discovery and trial misconduct," arguing that the City failed to produce certain evidence until the eve of trial. (Mot., Dkt. 359, at 10–13). The documents at issue were "laboratory technician records," including a "shooting reconstruction report and trajectory slides." (*Id.* at 10). Plaintiffs assert that the concealment of these records "was done in blatant violation of the discovery rules" and "severely prejudiced Plaintiffs' ability to prepare for trial." (*Id.* at 11). As to how this alleged concealment harmed them, Plaintiffs argue:

> If [the City] had timely produced these documents . . . Plaintiffs would have conducted much of their core discovery differently. Without the benefit of Sarah Jordan's shooting reconstruction work, Plaintiffs were forced to retain forensic experts to start from scratch to reconstruct the shooting using digital evidence. Plaintiffs were deprived of the chance to ask key witnesses about Sarah Jordan's documents (including Jordan herself); and Plaintiffs could not have the benefit of the documents or related witness testimony for consideration by Plaintiffs' experts.

(*Id.* at 11–12). Plaintiffs additionally include a request for "the Court to issue a show-cause order requiring [the City] to provide sworn testimony explaining the facts and circumstances regarding its handling of the [late-produced] documents." (*Id.* at 12–13).

The City responds that Plaintiffs have failed to "demonstrate reversible error from an allegedly improper time limitation" and review relevant procedural history. (Resp., Dkt. 461, at 7–10). On June 20, 2025, Plaintiffs moved for sanctions regarding the late discovery. (Trial Tr. Vol. 1, Dkt. 469, at 121). Counsel for Plaintiffs agreed that "we're not requesting a continuance based on this late production." (*Id.*). Rather, counsel for Plaintiffs stated that the sanction they were requesting was being "allowed to fully explain through an expert or direct questioning witnesses from the City . . . that there was a late production . . . and to describe . . . what that production was

in general terms." (*Id.*).[2] Plaintiffs' counsel also requested that the City and Defendant Gutierrez "not be allowed to use any . . . documents that [Plaintiffs] don't introduce" from the group of untimely produced documents "since they were not produced during the discovery period." (*Id.* at 122). Subsequently, on June 29, 2025, Plaintiffs filed an emergency motion seeking an extra five hours in trial time, based in part on the City's late production. (Emerg. Mot., Dkt. 425, at 2–3). The Court "considered all of the grounds to request additional time" and, based "especially [on] the late disclosures" and the inefficiencies caused by the late disclosures, granted Plaintiffs an additional two hours of trial time. (Trial Tr. Vol. 7, Dkt. 475, at 15:12–25). After describing this procedural history, the City argues that "Plaintiffs did not object to this ruling, nor did Plaintiffs ever renew a request for additional time beyond the two hours they were granted." (Resp., Dkt. 461, at 8).

Additionally, the City argues that Plaintiffs fail to show how the Court's time limitations affected their substantial rights or was not harmless error. (*Id.* at 8–9). It asserts that Plaintiffs do not explain how the subject documents "bear on any element or disputed fact the jury actually had to decide." (*Id.* at 8).

Plaintiffs reply that they chose to request sanctions without requesting a continuance because they expected that the relevant facts would come out through witness testimony, but then the Court denied their request to question a City witness on the late production. (Reply, Dkt. 467, at 12). They assert that this ruling was "particularly prejudicial to Plaintiffs given the nature of the case and Plaintiffs' trial theory." (*Id.*). Plaintiffs also emphasize their asserted basis for a new trial "has nothing to do with trial time limitations" and is instead "based on [the City]'s egregious and *unexplained* discovery misconduct that tainted the trial from the outset." (*Id.* at 13) (emphasis in

---

[2] *See, e.g.*, Trial Tr. Vol. 2, Dkt. 470, at 27:2–28:24 (Plaintiffs' counsel informing the jury about the late production, including the shooting reconstruction report, during his opening statement); 83:13–22 (Plaintiffs' counsel eliciting testimony from an expert that he had received from the City "[l]ast Wednesday" "2,200 pages of information that had never been released to us").

original). They cite to *Rozier v. Ford Motor Co.* for support, in which the Fifth Circuit ordered a new trial based on the defendant's failure to produce a document during discovery despite defense counsel's knowledge of the document. 573 F.2d 1332, 1345–46 (5th Cir. 1978). (*Id.* at 7 n.2, 13–14).

The Court finds that Plaintiffs have failed to meet their "burden of showing harmful error." *See Sibley*, 184 F.3d at 487 (quoting *Del Rio Distributing, Inc. v. Adolph Coors Co.,* 589 F.2d 176, 179 n.3 (5th Cir. 1979)). For one, this case is distinguishable from *Rozier*. In *Rozier*, the movant's counsel did not learn of the unproduced document until after trial. *Rozier*, 573 F.2d at 1137. Here, though the City did not produce the laboratory technician records until the eve of trial, Plaintiffs' counsel did have the records during trial; therefore, unlike the plaintiff in *Rozier*, Plaintiffs' counsel had the opportunity to question witnesses about the documents (which they did), to move for sanctions related to the discovery misconduct (which the Court granted), and to move for extra time at trial (which the Court granted in part).

Moreover, Plaintiffs' vague, conclusory assertions that they would have conducted discovery and trial differently without specifics do not convince the Court that "prejudicial error has crept into the record or that substantial justice has not been done." *See Sibley*, 184 F.3d at 487. Although Plaintiffs' experts did not have the benefit of the City's reconstruction report prior to trial, Plaintiffs and their forensic expert made their own shooting reconstruction. (*See* Trial Tr. Vol. 2, Dkt. 470, at 29:3–8) ("Why did [Austin Police Department ("APD")] try to bury and hide the firearms examiner's trajectory report? Well, when we show you the result of the shooting reconstruction work that we did with the help of our own forensic expert, you will understand why APD did not want you to see this evidence and why they did not want it to be used as evidence against Officer Gutierrez."). Plaintiffs do not explain how receiving the City's reconstruction report earlier would

have changed their tactics or how the report could have affected the jury's determinations.[3] Thus, unlike in *Rozier*, the Court does not itself see a "likely use [of the evidence that] reveals the prejudice [Plaintiffs] may have suffered."[4] *See Rozier*, 573 F.3d at 1343. Plaintiffs' motion for a new trial based on the City's discovery misconduct is therefore denied.

### B. The Court's Jury Instruction to Disregard Testimony

Plaintiffs also argue that a new trial is warranted because "[the City]'s counsel . . . misled the Court into issuing erroneous and highly prejudicial instructions to the jury to disregard key testimony from the prior day."[5] (Mot., Dkt. 459, at 4). The Court will spend little time on this meritless argument, as the Court and the parties extensively discussed this dispute at trial on July 3, 2025. Plaintiffs' motion claims that "[d]uring discovery, Plaintiffs and [their expert] had expressly raised issues with missing crime scene photos," (Mot., Dkt. 459, at 13), but the "raising" of these issues was solely in the context of depositions and an expert report. (Trial Tr. Vol. 10, Dkt. 478, at 6:21–7:10). Though Plaintiffs' counsel noticed discrepancies regarding photograph files (such that it appeared some photographs may have been missing) approximately one month before trial,

---

[3] It is true that Plaintiffs and their forensic expert may have spent unnecessary time and resources constructing their own reconstruction report, but the Court finds that this is not prejudicial error that warrants a new trial.

[4] In *Rozier*, the Fifth Circuit stated: "We cannot know what use, if any, plaintiff's counsel would have made of the [document] had it been produced by [the defendant] prior to trial. However, consideration of one likely use reveals the prejudice that [the plaintiff] may have suffered as a consequence of [the defendant's] misconduct." *Rozier*, 573 F.3d at 1343. The Court here does not similarly find prejudice suffered by Plaintiffs.

[5] On Day 8 of trial, Plaintiffs' counsel questioned Austin Police Department Detective Steve McCormick about "APD's failure to produce infrared images that were taken of Gutierrez's vehicle during SIU's warrant search." (Mot., Dkt. 459, at 13). Plaintiffs claim that their questioning "tend[ed] to prove that 51 crime scene photographs had been deleted from the collection of photos" produced. (*Id.*). Plaintiffs' counsel subsequently questioned their expert, Arthur Chancellor, about missing infrared images. (*Id.* at 14; *see also, e.g.*, Trial Tr. Vol. 9, Dkt. 477, at 201:5–19, 207:4–6). After stating that Plaintiffs' counsel's actions were "contrary to the truth-seeking function of this process" by not doing "the things [they] could have done if [they] in good faith really wanted" to understand the file discrepancies, and that Plaintiffs' counsel had instead "put in front of the jury this specter of there being spoliation," (*id.* at 6:8–13), the Court decided to tell the jury to disregard the testimony from the day before regarding missing infrared imaging. (*Id.* at 27:13–14; 29:10–25). When the Court made this determination, counsel for Plaintiffs stated, "I'm fine with that, your Honor," and made no objections. (*Id.* at 27:15–16).

Plaintiffs' counsel made the conscious decision to not file a motion with the Court regarding potential spoliation and to not discuss the discrepancies with opposing counsel. (*Id.* at 5:16–6:19). They now argue that they "were not required to file a motion to compel because this is not a discovery dispute" and that they "were perfectly within their rights to question McCormick about the deleted photos." (Reply, Dkt. 467, at 19–20).

During trial, the Court found that counsel's decision had the appearance of "gamesmanship," (Trial Tr. Vol. 10, Dkt. 478, at 7:25), and that it was unfair for "the jury [to be] left with a strong impression of nefarious activity on the part of the City and the City not have – much less [Gutierrez's counsel and Gutierrez] not having a meaningful opportunity to even respond to that." (*Id.* at 8:14–19). The Court reiterates this finding. Plaintiffs are "not entitled to a new trial simply because [their] strategy in the first trial did not work." *See Penzoil Expl. & Prod. Co, v. Oxy USA*, 99 F.3d 1134, at *3 n.1 (5th Cir. 1996) (per curiam).

The Court also notes that counsel for the City represented that "the 24 infrared images taken by [the] crime scene analyst" in fact had been "produced on September 16, 2022." (*Id.* at 10:17–21). He also represented that the "native file folders that the plaintiffs had requested of the infrared photographs . . . [were] produced on January 5, 2024." (*Id.* at 10:21–24). Plaintiffs claim now, as they did during trial, that counsel for the City "had essentially hidden . . . copies of purported infrared images buried inside an unrelated set of photographs." (Mot., Dkt. 459, at 14–15; Trial Tr. Vol. 10, Dkt. 478, at 15:6–16:6). But, as the Court has already pointed out, the infrared photographs were included in a group of vehicle search photos. (Trial Tr. Vol. 10, Dkt. 478, at 16:7–8). And, given that Plaintiff's expert Arthur Chancellor held himself out as an expert in infrared imaging, the Court noted that he would have been in a position to notice that there were infrared images in the discovery materials. (*Id.* at 14:21–15:5).

10

Ultimately, the Court finds that it was not "misled," (*see* Mot., Dkt. 459, at 4), and that its decision to tell the jury to disregard testimony regarding discrepancies between the number of photographs taken and produced was not prejudicial error.[6] Plaintiffs' motion for a new trial on this basis is denied.

### C. Evidence of Jessica Arellano's Settlement

Next, Plaintiffs argue that a new trial is warranted because the Court erroneously excluded from evidence the fact that Jessica Arellano settled with Defendants prior to trial. (Mot., Dkt. 459, at 16–18). (*See also* Order Granting the City's Mot. in Limine, Dkt. 381, at 5) ("In referring to Arellano, the parties and the Court will simply explain to the jury that Arellano is no longer a party in this suit. No party shall mention that she settled her claims with Defendants."). According to Plaintiffs, Gutierrez "opened the door to evidence of Arellano's settlement with Defendants" by "attack[ing] her credibility as a witness using her asserted lawsuit claims." (Mot., Dkt. 459, at 17). They in particular claim that Gutierrez's closing arguments served to attack Arellano's credibility. (*Id.*). Plaintiffs contend that, in light of the fact that evidence of a settlement agreement for credibility or to prevent confusion is not barred by the Federal Rules of Evidence, they should have been allowed to offer evidence of the settlement to the jury for these purposes. (*Id.*). At trial, Plaintiffs made an offer of proof "that would just simply be . . . the fact of the settlement." (Trial Tr. Vol. 9, Dkt. 477, at 55:11–23).

---

[6] Plaintiffs also argue in their Motion and Reply that the native files in fact were not produced, contrary to the City's representation to the Court on July 3, 2025. (Mot., Dkt. 459, at 12 n.3; Reply, Dkt. 467, at 16–17). Taking Plaintiffs' argument as true, Plaintiffs still fail to meet their burden to show that the trial was unfair or that the Court's instruction was unduly prejudicial. Plaintiffs' counsel chose to address the missing files solely through testimony before the jury, rather than actually attempting to retrieve the missing photographs through conference with Defendants or through the Court's intervention. Had they forgone this gamesmanship and instead sought after the truth, the problem of the missing native files could have been resolved. The Court will not grant Plaintiffs a new trial because their strategy failed.

The City argues that the cases cited by Plaintiffs in support of their argument involved potential jury confusion arising from the "empty chair" of a *defendant*, rather than of a prior plaintiff. (Resp., Dkt. 461, at 12). It further asserts that "[the] Court correctly determined that any jury confusion could be adequately avoided by a simple explanation 'that Arellano is no longer a party in this suit.'" (*Id.*). Plaintiffs reply that the exclusion of the settlement agreement "denied [them] their basic procedural and evidentiary rights to offer rebuttal evidence." (Reply, Dkt. 467, at 22).

"Rule 408 by its terms does not operate to exclude evidence unless it is offered to prove 'liability for or invalidity of the claim or its amount.' . . . Whether to admit evidence for another purpose is within the discretion of the trial court." *Belton v. Fibreboard Corp.*, 724 F.2d 500, 505 (5th Cir. 1984) (first citing Advisory Committee Notes, Fed. R. Evid. 408; and then citing *Reichenbach v. Smith,* 528 F.2d 1072, 1074 (5th Cir. 1976)). The Court finds that it was not error to exclude evidence of the settlement in its discretion. *See id.* Plaintiffs have failed to demonstrate prejudicial error based on the Court's exclusion of evidence of Arellano's settlement. *See Sibley*, 184 F.3d at 487. Though Plaintiffs argue that Gutierrez impeaching Arellano should have resulted in their ability to rehabilitate Arellano using the proof of settlement, Plaintiffs fail to substantively explain *how* rehabilitating Arellano—who settled with the City—would have impacted the jury's verdict regarding Gutierrez. *See id.* ("[T]he burden of harmful error rests on the party seeking the new trial."). It is not clear how informing a jury of "just the fact of settlement," (*see* Trial Tr. Vol. 9, Dkt. 477, at 55:15), would have affected deliberations. Moreover, Plaintiffs did not object during trial to Gutierrez's closing argument as improper. *See Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988) (holding that a party who failed to object to improper closing arguments during trial cannot now "'urg[e] the improper arguments as grounds for a new trial after the jury had returned its verdict'"). The Court therefore will deny the motion for a new trial on this basis.

**D. Verdict Against the Great Weight of the Evidence**

Plaintiffs next argue that the jury's verdict on Question 2, which asked them to determine whether Gutierrez was liable for the Fourth Amendment violation of false arrest, was against the great weight of the evidence. (Mot., Dkt. 459, at 21). They assert that Gutierrez "gave critical admissions that establish his liability for" false arrest during his trial testimony and that Serrato and Officer Brian Nenno ("Nenno") provided testimony at trial to establish proximate causation. (*Id.* at 21–23). Plaintiffs' argument focuses largely on the statements Gutierrez made to the 911 operator and on what he did not tell the responding officers who arrived at the scene. (*Id.*).

Gutierrez responds that "Plaintiffs presented no evidence that Officer Serrato had any awareness of, much less relied on, any statements made by Officer Gutierrez to the dispatcher," such that "nothing about Officer Gutierrez's dispatcher communications can support a causal nexus for Officer Serrato's independent decision to shoot (seize) Mr. Gonzales." (Resp., Dkt. 461, at 14–15). He also contends that the evidence cited by Plaintiffs in their motion is "cherry-picked" and that the entire record considered by Plaintiffs included "competing narratives" that the jury was entitled to weigh.[7] (*Id.* at 16).

"The trial court in passing on a motion for a new trial need not take the view of the evidence most favorable to the verdict winner, but may weigh the evidence." *Shows*, 671 F.2d at 930. As described in Section II(A), *supra*, a court may only grant a new trial if the jury verdict was "against the great—not merely the greater—weight of the evidence," and "mere conflicting evidence . . . cannot serve as the grounds for granting a new trial." *Scott*, 868 F.2d at 789 (quoting *Conway*, 610 F.2d at 363); *Dawson*, 978 F.2d at 208. Here, though Plaintiffs argue that the jury heard testimony that Gonzales was not holding a gun, (Mot., Dkt. 459, at 22), they also heard testimony from

---

[7] Gutierrez also contends, as he did during trial, that Plaintiffs' theory of false arrest is not legally cognizable. (*Id.* at 14).

Gutierrez that he was holding a gun and pointed it at him. (*See, e.g.*, Trial Tr. Vol. 3, Dkt. 471, at 206:5–8; Trial Tr. Vol. 4, Dkt. 472, at 176:12–19). Additionally, though Plaintiffs claim that Gutierrez's use of "shots fired" would only mean that the officer had received incoming fire, (Mot., Dkt. 459, at 22), Gutierrez stated that he was "trained that shots fired could be incoming or outgoing shots." (Trial Tr. Vol. 3, Dkt. 471, at 237:15–22). Based on this conflicting testimony, on testimony that Serrato did not see the 911 dispatcher's call comments, (*see, e.g.*, Trial Tr. Vol. 5, Dkt. 473, at 42:3–8, 44:18–25 45:16–20), and on testimony that Serrato personally felt Gonzales to be a "threat" based on him "ignoring [his] commands" and "reach[ing] into a car where there was a firearm," (*id.* at 15:3–7), a jury could have concluded that Gutierrez's statements and/or omissions were not the proximate cause for Serrato's shooting of Gonzalez. The jury's verdict was not against the great weight of the evidence.

### E. Plaintiffs' *Monell* Evidence

After Plaintiffs rested their case-in-chief, the Court granted the City's Rule 50 motion on the basis that Plaintiffs had not produced evidence sufficient under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978) to establish the City's liability.[8] (Order Granting Rule 50 Mot., Dkt. 438, at 4–9). Plaintiffs' final basis for a new trial is that they "could have presented [evidence on the moving force element of their *Monell* claim] through expert Michael Sierra-Arevalo, a police sociologist who was prepared to testify regarding police cohesion to department cultural norms, particularly regarding use of force and a department's failure to investigate and/or discipline use of force events." (Mot., Dkt. 459, at 24). Plaintiffs claim, however, that they "chose not to call Mr. Sierra-Arevalo as a witness solely because of trial time limitations." (*Id.*). The City responds that

---

[8] More specifically, relying on the Fifth Circuit's opinion in *James v. Harris County*, 577 F.3d 612 (5th Cir. 2009), the Court found that Plaintiffs did not produce sufficient evidence to prove that the City's alleged practice of permitting excessive force was the moving force behind Gutierrez's shooting of Gonzales. (Order Granting Rule 50 Mot., Dkt. 438, at 5).

Plaintiffs' complaint about time limits at trial was waived because they never sought a continuance, did not object to the Court's grant of two hours of additional trial time (rather than five hours), and never made an offer of proof describing the proposed testimony that Plaintiffs chose not to present. (Resp., Dkt. 461, at 19).

The Court finds again that Plaintiffs have failed to meet their burden. At trial, when Plaintiffs were still planning on calling Sierra-Arevalo as a witness, Plaintiffs' counsel stated that he would "provide a very short testimony from the background section of his report on . . . police sociology . . . and the way that there's a sort of cultural adhesion within police departments." (Trial Tr. Vol. 7, Dkt. 475, at 175:3–11). Plaintiffs do not explain how such testimony would prove that Gutierrez was influenced by an alleged City practice of permitting excessive force by under-investigating and under-disciplining such force. Their vague argument that such testimony would go to causation, (Mot., Dkt. 459, at 24), is not enough to meet their burden to show harmful error. Accordingly, the Court will deny Plaintiffs' motion for a new trial.

### F. Serrato's Dismissal from the Case

Finally, Plaintiffs contend that the Court should reconsider its decision to dismiss Serrato by granting his motion for summary judgment on qualified immunity grounds. (Mot., Dkt. 459, at 18). They argue that the Court's Order granting Serrato summary judgment "relied expressly on the Fifth Circuit's 'moment in time' doctrine" and that this doctrine was subsequently rejected by the Supreme Court in *Barnes v. Felix*, 605 U.S. 73 (2025). (*Id.*). Accordingly, Plaintiffs assert that the Court must reconsider its summary judgment ruling under the proper "totality of the circumstances" test, including considering "facts, evidence and information that a jury might have concluded would have been known or knowable to a reasonable officer based on events prior to the 'moment in time' of the second shooting." (*Id.*). Serrato responds that (1) post-*Barnes* courts in this Circuit continue to weigh heavily an officer's belief that a suspect was reaching for a gun and (2) the Court's Order did

15

consider *arguendo* whether Serrato's actions were reasonable considering facts prior to the moment of the threat. (Serrato Resp., Dkt. 463, at 6–8) (citing Order Granting Mot. Summ. J., Dkt. 328, at 34). Plaintiffs reply that this issue involves fact disputes and that, even if the Court did consider some of Plaintiffs' arguments, the Court declined to consider other arguments based on the moment-in-time doctrine. (Reply, Dkt. 467, at 23–24).

The Court finds that, in line with the Supreme Court's instruction for courts to not "focus on only a single moment" and to also look to "any relevant events coming before," *Barnes*, 605 U.S. at 83, the Court's Order granting Serrato summary judgment already considered all relevant events prior to the moment of the threat. As Serrato argues in his response, the Court stated—relying on now-overturned case law—that what Serrato knew or did not know prior to the shooting was not relevant, but then nonetheless found that "*[e]ven if these actions were relevant*, a reasonable jury would not find that Serrato acted unreasonably in not gathering more information during this rapidly evolving situation." (Order Granting Mot. Summ. J., Dkt. 328, at 34) (emphasis added). The Court then reviewed the entire timeline of events involving Serrato—that he assigned himself to the call, started driving to the scene of the incident approximately thirty seconds later, arrived at the scene two minutes late, and then used deadly force less than a minute and a half after arriving. (*Id.*). The Court discussed that Serrato's bodycam footage showed that his GPS guidance prevented him from seeing the 911 operator call notes. (*Id.*). Based on this undisputed timeline and the events that occurred after Serrato arrived at the scene, the Court found that a reasonable jury would not find that Serrato acted unreasonably in not gathering more information or interrogating Gutierrez prior to his use of force against Gonzalez. (*Id.* at 34–35). The Court's granting of qualified immunity to Serrato therefore included a totality-of-the-circumstances analysis as to what a reasonable officer under these circumstances would have known, such that it would be duplicative to grant the motion

to reconsider and redo its analysis under the Supreme Court's holding in *Barnes*. Accordingly, the

Court will deny the motion to reconsider.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Motion for New Trial Pursuant to Federal Rule

of Civil Pursuant to Federal Rule of Civil Procedure 59(a), (Dkt. 459), is **DENIED**.

**SIGNED** on June 15, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE